Filed 11/24/25  P. v. Verdugo CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO VERDUGO,<br><br>     Defendant and Appellant. | B342616<br><br>(Los Angeles County<br> Super. Ct. No. LA013347) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael V. Jesic, Judge.  Affirmed.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, and Alejandro Verdugo, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 1994, a jury convicted Alejandro Verdugo of special circumstance murder and rape by foreign object in concert. Thereafter, Verdugo petitioned for resentencing under Penal Code section 1172.6.[1] After an evidentiary hearing, the trial court denied the petition. Verdugo appeals from the denial order. His appellate counsel filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216. Verdugo filed a supplemental brief (1) challenging the denial of his section 1172.6 petition and (2) requesting a resentencing hearing under section 1172.1. We have exercised our discretion and independently reviewed the record for any arguable issues. Having found none, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Evidence at Verdugo's Trial*

The following facts are from this court's nonpublished opinion in *People v. Verdugo* (Jan. 18, 1996, B088197) (*Verdugo*) and from the evidence deduced at trial as set forth in the prosecution and defense evidentiary briefs.

At night in the parking lot of a bar, Suzanne Shapiro (the victim) was murdered by kicks to her head and a gunshot to her head. A trail of blood drops led about 40 feet to where the body, nude from the waist down, rested.

The medical examiner's office concluded that the gunshot was fatal and that the massive blunt force trauma to the head, with some injuries consistent with being kicked hard with a steel-toed work boot, would have been fatal independent of the gunshot. The victim's anus was injured and penetrated with a foreign object, probably one or both of two baseball bats found at the scene, stained with fecal matter and blood. The victim's teeth were chipped, and her jaw was bruised. Marks on her thighs appeared to be

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

footprints made by the sole of a shoe. Bruising on the victim's arms were consistent with her being restrained by someone. She also had bruising on her legs, thighs, buttocks, and pubic area. All of these injuries were close to the time of her death. The victim's time of death was approximately 2:00 a.m.

Witnesses saw Verdugo and his brother, codefendant Daniel Verdugo (Daniel), at the scene with the victim while she was alive. Daniel and Verdugo wore steel-toed work boots every day.

Verdugo and Daniel made incriminating admissions of their involvement. Verdugo admitted to his coworker the next day that "we did the worst thing that anybody could ever do," which was killing someone. Disguising the events as a "fight" with a "guy," Verdugo admitted to the coworker that he restrained the "guy" on the ground while Daniel kicked the victim in the head with his steel-toed work boots until the victim's eye popped out. Then, Daniel took out a gun and shot the victim in the head. Verdugo suffered a black eye in the struggle. Daniel admitted to the killing, claiming his gun fired accidentally after the victim pulled down her own pants and grabbed Daniel's gun after he refused her sexual overtures.

2.   *Verdict and Sentence*

A jury convicted Verdugo of first degree murder (§ 187, subd. (a)) and rape by foreign object in concert (§§ 264.1, 289). The jury further found true the special circumstance that the murder was in the commission of the rape by a foreign object (§ 190.2, subd. (a)(17)). The jury was unable to reach a verdict on the special circumstance that the murder involved the infliction of torture (§ 190.2, subd. (a)(18)). The trial court sentenced Verdugo to life

3

without the possibility of parole for the special circumstance murder and a concurrent term of seven years for the rape offense.

On appeal, a different panel of this court affirmed the judgment.

3. *Section 1172.6 Petition*

Verdugo filed a petition for resentencing pursuant to section 1172.6. The trial court found Verdugo had made a prima facie case for relief and issued an order to show cause why his petition should not be granted. The parties filed briefing.

On November 7, 2024, the trial court held an evidentiary hearing on the petition. Verdugo testified at the hearing. On the date of the incident, Verdugo testified that he met Daniel in the parking lot of a bar near their apartment and Daniel was waiting for him. Verdugo testified that the victim approached him and asked, "Where's the party?" The victim appeared intoxicated. Verdugo ignored her and sat down in an "unlocked car in the parking lot." Daniel began a conversation with the victim. At one point, the victim was on the ground and Daniel was standing next to her. When Verdugo came over to see if the victim was okay, she punched him in the eye. When Verdugo got up, Daniel shot her. Both men fled and ran across the street to their apartment. A few minutes later, they agreed to move the victim's body to a place where someone would see her. Verdugo did not know the victim was already dead. The men went back to the parking lot and "scooted" her body into a lit area. Verdugo told his coworker the next day that Daniel had beat up some "guy." Because English was his second language, Verdugo sometimes mixed up his pronouns and may have said "guy," but he never meant to lie to his coworker.

4

Verdugo called Dr. Francesca Lehman, a clinical and forensic psychologist, to testify on his behalf. Dr. Lehman interviewed Verdugo in October 2023. She opined that Verdugo had trouble appreciating risks and consequences because of his mental deficiencies and his traumatic childhood in the form of physical abuse.

After hearing argument and reviewing the parties' briefing, the trial court denied the petition. The court found, "Based on the evidence that was deduced at trial, based on everything we've heard today there is no doubt in my mind, and I find beyond a reasonable doubt that [Verdugo] would be convicted of murder if prosecuted today on the same record; that he can still be convicted under the theory of felony murder or as an aider and abettor with malice aforethought, either express or implied. As I said, this was an absolutely horrific murder. I know the jury hung on the torture allegation. I don't know how they did. But what that woman must have gone through and the reason she went through the way she did was because [Verdugo] held her down and made it impossible for her to try to get away and allowed her to be beaten to the point where her eye fell out of her head and held her down while she was shot and killed."

Verdugo timely appealed.

## DISCUSSION

1. *Senate Bill No. 1437 and Standard of Review*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) and subsequent related legislation limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's

5

participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*), superseded by statue on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.)

Senate Bill 1437 added section 188, subdivision (a)(3), which provides that "to be convicted of murder, a principal in a crime shall act with malice aforethought" and malice "shall not be imputed to a person based solely on his or her participation in a crime." Senate Bill 1437 also amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person (1) was the actual killer, (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor, or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile, supra*, 10 Cal.5th at p. 842.)

Senate Bill 1437 created a procedure, codified in section 1172.6, for a person convicted of murder under the former law to be resentenced if the person could no longer be convicted of those crimes under current law. (*People v. Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at p. 847.) A defendant commences that procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder under current law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

If a petition establishes a prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing at which the parties may offer new or additional evidence and the trial court sits as an independent factfinder to determine beyond a

6

reasonable doubt whether the defendant is guilty of murder under a valid theory.  (§ 1172.6, subds. (b)(3), (c), & (d)(1); *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

We review a trial court's findings after a section 1172.6, subdivision (d)(3), evidentiary hearing for substantial evidence.  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

2. *Major Participant Who Acted With Reckless Indifference to Human Life*

At an evidentiary hearing to determine whether a defendant was a major participant who acted with reckless indifference to human life, a trial court must consider the factors identified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

First, to determine "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant," a court should consider, "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks, supra*, 61 Cal.4th at pp. 794, 803, fn. omitted.)

Second, factors to consider when determining reckless indifference are: "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically

7

present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?"  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 [summarizing *Clark* factors].)

Substantial evidence supports the trial court's finding that Verdugo could be convicted of first degree murder under current law.  Verdugo was physically present at the scene and actively facilitated the murder.  While there was no evidence that Verdugo personally shot or beat the victim, he did restrain her while his brother kicked her in the head repeatedly with his steel-toed boots.  The coroner found that the head trauma to the victim caused by the beating would have been fatal by itself.  By holding the victim down while Daniel kicked her, Verdugo was aware of and assisted with the life-endangering conduct.  Verdugo did nothing to stop Daniel while he was continuing to kick her in the head and then later when Daniel shot the victim.  The criminal conduct appeared to last a significant amount of time, given the fact that the victim was repeatedly kicked in the head and then sexually assaulted prior to being shot in the head.  Rather than help the victim, Verdugo left her to die.

The totality of the *Banks/Clark* factors supports the trial court's finding that Verdugo was a major participant in the felony who acted with reckless indifference to human life under current law.  (See generally *Tison v. Arizona* (1987) 481 U.S. 137, 158 [Tison brothers' "high level of participation" in kidnapping and robbery "implicates" them in culminating murder of a family].)

In his supplemental brief, Verdugo requests a resentencing hearing under section 1172.1. This request was not presented to the trial court and does not concern any matter fairly included in the relevant trial court ruling. Although section 1172.1 permits the trial court to consider resentencing a defendant, the statute does so under a different mechanism with a different trigger. (§ 1172.1, subd. (a).) Accordingly, we will not consider the request in this appeal.

## DISPOSITION

The order denying Verdugo's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

We concur:

COLLINS, J.

VAN ROOYEN, J.*

---

*Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9